UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

NML CAPITAL, LTD.,

                   Plaintiff,

                                          14 Civ. 8601 (TPG)

v.

REPUBLIC OF ARGENTINA,

                   Defendant.

-------------------------------------------------------x

## REPLY MEMORANDUM OF LAW IN SUPPORT OF THE MOTION BY NML CAPITAL, LTD. FOR PARTIAL SUMMARY JUDGMENT

**DECHERT LLP**
Robert A. Cohen
Dennis H. Hranitzky
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3500

*Attorneys for Plaintiff NML Capital, Ltd.*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................... 2

I. Plaintiff Is Entitled To Partial Summary Judgment Based On Argentina's Indisputable Violation Of The Pari Passu Clause ............................................... 2

    A. Argentina Is Collaterally Estopped From Arguing That It Has Not Violated The Pari Passu Clause ........................................................... 2

    B. Even If Argentina Could Re-Litigate The Issue, The Undisputed Facts Prove That Argentina Breached The Pari Passu Clause ....................... 3

    C. Argentina's Characterization Of The Impact Of The Second Circuit's Interpretation Of The Pari Passu Clause Is Premature And Incorrect ................ 7

II. Argentina's Various Arguments To Avoid Summary Judgment Are All Unavailing ............................................................................................................ 11

    A. *Res Judicata* Does Not Bar Plaintiff's Claims Under The Pari Passu Clause ............................................................................................... 11

        1. Federal Law Governs The *Res Judicata* Analysis In This Case ............. 11

        2. Argentina Cannot Meet Either Of Two Key *Res Judicata* Requirements ................................................................... 13

    B. Argentina's Obligations Under The Pari Passu Clause Are Not Merged Into The Judgments ........................................................................ 23

        1. Argentina Wrongly Argues For A Rigid And Outmoded Application Of The Merger Doctrine .................................... 23

        2. The Pari Passu Clause Entitles Plaintiff To Relief Other Than A Judgment For Principal And Interest ........................... 25

        3. Even If New York Law Applied, The Merger Doctrine Cannot Defeat Plaintiff's Equitable Rights ................................ 26

III. Plaintiff Has Adequately Alleged Ownership For The Purposes Of This Motion For Partial Summary Judgment ................................................................. 29

CONCLUSION ........................................................................................................ 30

## <u>TABLE OF AUTHORITIES</u>

CASES

*Automatic Liquid Packaging, Inc. v. Dominik*,
    852 F.2d 1036 (7th Cir. 1988) .......................................................................17

*Bank of N.Y. v. First Millennium, Inc.*,
    607 F.3d 905 (2d Cir. 2010).....................................................................14, 20

*Cohoes Indus. Terminal, Inc. v. Latham Sparrowbush Assocs.*,
    75 B.R. 147 (Bankr. S.D.N.Y. 1987) ..........................................................25

*Craven v. Rigas*,
    85 A.D.3d 1524 (3d Dep't 2011) .................................................................24

*Curtiss-Wright Corp. v. Gen. Elec. Co.*,
    446 U.S. 1 (1980)..........................................................................................16

*Dombrowski v. Pfister*,
    380 U.S 479 (1965)..........................................................................................6

*Duane Reade, Inc. v. St. Paul Fire and Marine Ins. Co.*,
    600 F.3d 190 (2d Cir. 2010).....................................................................12, 13

*Ellis v. Abbey & Ellis*,
    742 N.Y.S.2d 225 (1st Dep't 2002) ............................................................21

*Export-Import Bank of the Republic of China v. Grenada*,
    No. 13 Civ. 1450 (HB), 2013 WL 4414875 (S.D.N.Y. Aug. 19, 2013) ...................12, 13, 14

*Gramatan Home Investors Corp. v. Lopez*,
    46 N.Y.2d 481 (1979) ..................................................................................23

*Hahl v. Sugo*,
    169 N.Y. 109 (1901) ....................................................................................21

*Hellstern v. Hellstern*,
    279 N.Y. 327 (1938) ....................................................................................21

*HSBC Bank USA, Nat. Ass'n v. Adelphia Commc'ns Corp.*,
    No. 07....................................................................................................22

*Hudson River Sloop Clearwater, Inc. v. Dep't of Navy*,
    891 F.2d 414 (2d Cir. 1989).........................................................................16

*In re Cohoes Indus. Terminal, Inc.*,
    78 B.R. 681 (Bankr. S.D.N.Y. 1987) ..................................................................25, 26

*In re Doherty*,
    76 A.D.2d 14 (N.Y. App. Div. 1980) ........................................................................23

*In re Hunter*,
    4 N.Y.3d 260 (2005) ..................................................................................................21

*Interoceanica Corp. v. Sound Pilots, Inc.*,
    107 F.3d 86 (2d Cir. 1997).............................................................................7, 21, 23

*Jay's Stores, Inc. v. Ann Lewis Shops, Inc.*,
    256 N.Y.S.2D 600 (1965) ...............................................................................24, 26, 27

*Jean-Gilles v. Cnty. of Rockland*,
    463 F. Supp. 2d 437 (S.D.N.Y. 2006)........................................................................22

*Johnson v. Eli Lilly & Co.*,
    689 F. Supp. 170 (W.D.N.Y. 1988) ...........................................................................11

*Kinsman v. Turetsky*,
    804 N.Y.S.2d 430 (3d Dep't 2005)............................................................................22

*Knox v. County of Putnam*,
    No. 10 Civ. 1671(ER), 2012 WL 4462011 (S.D.N.Y. Sept. 27, 2012) ....................29

*Maharaj v. Bankamerica Corp.*,
    128 F.3d 94 (2d Cir. 1997).........................................................................................12

*Matter of Reilly v. Reid*,
    45 N.Y.2d 24 (1978) ..................................................................................................21

*Migra v. Warren City Sch. Dist. Bd. Of Educ.*,
    465 U.S. 75 (1984) ....................................................................................................23

*Mudholkar v. Univ. of Rochester*,
    261 F. App'x 320 (2d Cir. 2008) ...............................................................................22

*NML Capital, Ltd. v. Republic of Argentina*,
    699 F.3d 246 (2d Cir. 2012), *cert. denied*, 134 S. Ct. 201 (2013) ("*NML I*") ................ passim

*NML Capital Ltd. v. Republic of Argentina*,
    727 F.3d 230 (2d Cir. 2013) ("*NML II*") ...............................................................5, 6

*NML Capital, Ltd. v. Republic of Argentina*,
    No. 08 Civ. 6978 (TPG) (S.D.N.Y. Mar. 12, 2015) ..............................................10

*NML Capital, Ltd. v. Republic of Argentina*,
No. 12-105 (S.D.N.Y. Mar. 21, 2012) .......................................................................5

*O'Brien v. City of Syracuse*,
54 N.Y.2d 353 (1981) ...........................................................................................21, 22

*Orix Credit Alliance, Inc. v. Horten*,
965 F. Supp. 481 (S.D.N.Y. 1997) ........................................................................24, 27

*Perry v. Dickerson*,
85 N.Y. 345 (1881) ...............................................................................................24, 26

*Phoenix Canada Oil Co. v. Texaco Inc.*,
749 F. Supp. 525 (S.D.N.Y. 1990) ..............................................................................11

*Pons v. People's Republic of China*,
666 F. Supp. 2d 406 (S.D.N.Y. 2009)....................................................................19, 20

*Prime Mgmt. Co. v. Steinegger*,
904 F.2d 811 (2d Cir. 1990)........................................................................................7

*Raffe v. John Doe*,
619 F. Supp. 891 (S.D.N.Y. 1985) ..............................................................................11

*Siderpali, S.P.A. v. Judal Indus., Inc.*,
833 F. Supp. 1023 (S.D.N.Y. 1993)............................................................................16

*Smith v. Russell Sage Coll.*,
54 N.Y.2d 185 (1981) ...........................................................................................12, 18

*Sure-Snap Corp. v. State Street Bank & Trust Co.*,
948 F.2d 869 (2d Cir. 1991) .......................................................................................13

*Texas v. New Mexico*,
482 U.S. 124 (1987)...................................................................................................9

*Turchon v. United States*,
77 B.R. 398 (E.D.N.Y. 1987), *aff'd sub nom. In re Turchon*,
841 F.2d 1116 (2d Cir. 1988).....................................................................................25

*U.S. Bank Nat'l Ass'n v. Greenpoint Mortg. Funding, Inc.*,
950 N.Y.S.2d 494 (Sup. Ct. N.Y. Cnty. 2012), *aff'd*, 105 A.D.3d 639 (1st Dep't 2013)........22

*UBS Sec. LLC v. Highland Capital Mgmt., L.P.*,
927 N.Y.S.2d 59 (1st Dep't 2011) ..............................................................................18

*Wadsworth v. Lyon*,
93 N.Y. 201 (1883) ...................................................................................................27

*Westinghouse Credit Corp. v. D'Urso,*
   371 F.3d 96 (2d Cir. 2004) .................................................................................24

STATUTES

Foreign Sovereign Immunities Act, 28 U.S.C. § 1330, 1605 ......................................12

OTHER AUTHORITIES

19 A.L.R. 709 § 3[a] ....................................................................................................11

46 AM. JUR. 2D JUDGMENTS § 458 (2010) ...................................................................27

Fed. R. Civ. P. 54(b) .........................................................................................15, 16, 17

Fed. R. Civ. P. 56 .........................................................................................................29

Restatement (Second) of Judgments § 24(2) (1982)....................................................13

## **INTRODUCTION**

Argentina cannot refute Plaintiff's entitlement to partial summary judgment as to Argentina's violations of the Pari Passu Clause[1] on the facts or the law. Instead, Argentina's opposition simply rehashes its well-worn arguments that it never breached the Pari Passu Clause and that this Court's interpretation of the Clause, affirmed by the Second Circuit, was incorrect. These arguments have been repeatedly rejected by this Court and the Second Circuit, and the Supreme Court has twice declined to hear them. There is no reason for the Court to reconsider these arguments or to reach a different conclusion now.

Argentina's remaining contentions are similarly without merit. Argentina does not dispute the facts underlying Plaintiff's claims, let alone raise a genuine dispute as to any material fact. And Argentina's *res judicata* and merger defenses are ill-conceived, relying on misinterpretations of law and a mischaracterization of the relief sought here. The parties and the Court have recognized that Plaintiff's cause of action under the Pari Passu Clause is distinct from its cause of action for principal and interest and that relief under the Pari Passu Clause is available to both pre and post judgment claimants.

Plaintiff's motion for partial summary judgment should be granted.

---

[1] The term "Pari Passu Clause" and all other defined terms have the same meanings as defined in Plaintiff's opening memorandum of February 7, 2015 ("Pl. Br.").

# **ARGUMENT**

## **I.**

### **PLAINTIFF IS ENTITLED TO PARTIAL SUMMARY JUDGMENT BASED ON ARGENTINA'S INDISPUTABLE VIOLATION OF THE PARI-PASSU CLAUSE**

#### **A.** **Argentina Is Collaterally Estopped From Arguing That It Has Not Violated The Pari Passu Clause**

The Second Circuit has conclusively affirmed this Court's finding that Argentina's course of conduct, which began in 2005, breached the Pari Passu Clause. *NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246, 260 (2d Cir. 2012), *cert. denied*, 134 S. Ct. 201 (2013) ("*NML I*"). Argentina is precluded from re-litigating that issue. The interpretation of the Clause and whether Argentina breached it are precisely the issues this Court and the Second Circuit adjudicated previously (Pl. Br. at 18); those rulings were necessary to support summary judgment (*id.* at 19-20); and Argentina pursued every possible opportunity to contest these rulings, unsuccessfully (*id.* at 18-19). Collateral estoppel thus bars Argentina from contesting that it breached the Pari Passu Clause.

Argentina does not seriously contest this point. Rather, Argentina appears to assert that collateral estoppel does not apply as to theories "beyond the Second Circuit's decision." Opp. 32. But Plaintiff's collateral estoppel arguments do not go beyond the Second Circuit's decision. Although Plaintiff asserts *additional* theories of breach of contract and points out that Argentina has continued to breach the Clause since the Second Circuit's decision, *see infra* part I.B, the Second Circuit's ruling is nonetheless preclusive as to what it has already decided: that Argentina breached the Pari Passu Clause by virtue of its course of conduct stretching over more than seven years. Indeed,

2

the preamble to Argentina's contention that it "has not breached the Pari Passu Clause" concedes that Argentina defiantly refuses to recognize the injunction "[n]otwithstanding the prior rulings in this litigation." Opp. 32. This Court should forbid Argentina from rehashing the same unpersuasive arguments that this Court and the Second Circuit have already rejected.

### B. Even If Argentina Could Re-Litigate The Issue, The Undisputed Facts Prove That Argentina Breached The Pari Passu Clause

Beyond the fact that Argentina's arguments to the contrary are precluded, the undisputed evidence conclusively establishes that Argentina has breached the Pari Passu Clause—both under the Second Circuit's controlling interpretation of the Clause and under Argentina's own reading.[2]

First, the Second Circuit held that the Clause "protect[s] against" two "different forms of discrimination." *NML I*, 699 F.3d at 259. The first sentence, which states that "[t]he Securities will constitute . . . direct, unconditional, unsecured, and *unsubordinated* obligations" of Argentina "prohibits Argentina, as bond issuer, from formally subordinating the bonds by issuing superior debt." *Id.* (emphasis added). The second sentence, requiring equal rank of "payment obligations," "prohibits Argentina, as bond payor, from paying on other bonds without paying on the FAA Bonds." *Id.* The Second

---

[2] Contrary to Argentina's assertions (Opp. 30), the Second Circuit's decision does not prevent this Court from concluding that Argentina's ongoing payment attempts also violate the Pari Passu Clause separate and apart from the years-long course of conduct. Indeed, the Second Circuit did not reach the issue of whether "*any* non-payment that is coupled with payment on other debt" or "legislative enactment alone" could result in a breach of the Pari Passu Clause. *NML I*, 699 F.3d at 264 n.16 (emphasis in original; internal quotation omitted). Instead, it expressly declined to reach those issues and concluded that Argentina's "course of conduct" alone was sufficient to establish a breach. *NML I*, 699 F.3d 264 n.16.

Circuit has already rejected Argentina's arguments to the contrary (Opp. 32-39), as Argentina concedes (*id.* at 34-35).

Under the Second Circuit's authoritative construction, Argentina has breached the Clause repeatedly—and recently. Argentina has "pa[id] on other bonds without paying on the FAA Bonds." *NML I*, 699 F.3d at 259. Its most recent completed payment on Exchange Bonds occurred on March 31, 2014. Since then, Argentina has attempted to pay on the Exchange Bonds numerous times, including by sending payment to Nación Fideicomisos S.A., an Argentine entity it used to purportedly replace BNY as Indenture Trustee. *See* D.E. 9, Ex. 35 (Law No. 26,984). Argentina's most recent attempted payment was on March 31, 2015. Declaration of Robert A. Cohen in Support of the Reply Memorandum of Law in Support of the Motion By NML Capital, Ltd. for Partial Summary Judgment, dated April 7, 2015 ("Cohen Decl."), Ex. 1 (3/31/15 Reuters). These payment efforts effectively rank the Exchange Bonds as "regular debt" even while Argentina has "reduced the rank of plaintiffs' bonds to a permanent non-performing status." *NML I*, 699 F.3d at 260. Argentina has thus breached the second sentence of the Pari Passu Clause repeatedly. *See* Pl. Br. 21-22.

Second, arguing that some so-called "market understanding" trumps Circuit precedent, Argentina stubbornly insists that the Pari Passu Clause "prohibits only a creditor's involuntary legal subordination of debt." Opp. 33. Even if that were the test, Argentina has indisputably breached its own, self-serving formulation of the Pari Passu Clause by legally subordinating Plaintiff's bonds. Argentina has *conceded* that a sovereign could breach a Pari Passu Clause if it passed a law that subordinated debt that

4

is entitled to the benefits of the Pari Passu Clause. *See NML I*, 699 F.3d at 258; Opp. 35, *NML Capital, Ltd. v. Republic of Argentina*, No. 12-105 (Mar. 21, 2012) (Dkt. No. 143). That is precisely what Argentina has done. The Second Circuit has already recognized that the passage of the Lock Law and of Law 26,547 (which temporarily suspended the Lock Law while still forbidding payments to FAA bondholders) (the "Lock Law Suspension"), along with Argentina's "executive declarations," violated the anti-subordination provision because they legally forbade Argentina from paying holders of the FAA Bonds, or even negotiating a settlement with them. *See NML I*, 699 F.3d at 252 n.3, 254, 260; *NML Capital Ltd. v. Republic of Argentina*, 727 F.3d 230, 237-38 n.4 (2d Cir. 2013) ("*NML II*").

Argentina continues to engage in the same, ongoing course of conduct by adopting additional internal legal roadblocks to payment of the FAA Bonds. In September 2013, its legislature passed Law No. 26,886, which—just like the Lock Law and the Lock Law Suspension—prohibits Argentina from offering to pay FAA Bondholders what they are owed, or anything close to it. *See* Pl. Br. 12, 24. In March 2014, Argentina's highest court forbade recognition of judgments on FAA Bonds. *See* Pl. Br. 24-25. In September 2014, its legislature passed legislation condemning this Court's Pari Passu Injunction as "illegitimate and illegal." *See* Pl. Br. 24. And, ever since that Injunction was first affirmed, Argentina's highest executive officials have repeatedly declared that Argentina will not recognize Argentina's legal obligations to the FAA Bondholders. *See* Pl. Br. 25-27.

As the Second Circuit held, "Argentina's executive declarations and legislative enactments have ensured that plaintiffs' beneficial interests do *not* remain direct, unconditional, unsecured and unsubordinated obligations of the Republic." *NML I*, 699 F.3d at 260. Thus, Argentina has breached the Pari Passu Clause in multiple ways, under both this Court's and the Second Circuit's interpretations—and even under its own interpretation.

Argentina's attempts to avoid this conclusion fail. Argentina first notes that the Second Circuit did not hold that individual payments or enactments violate the Pari Passu Clause, implying that this Court cannot embrace that holding because the Second Circuit rejected it. Opp. 30-31. But as explained above, the Second Circuit certainly did not reject that conclusion. That court simply had no occasion to reach the issue because Argentina's entire "course of conduct" had so palpably breached the Clause that the court needed to go no further. *NML I*, 699 F.3d at 264 n.16.

Moreover, because the Second Circuit held that Argentina's course of conduct violates the Clause, it follows that Argentina's individual acts perpetuating *that same* course of conduct—additional legislative enactments, discriminatory payments, and executive declarations—necessarily constitute new and continuing violations. Argentina's contention that this conclusion "direct[ly] contradict[s]" the Second Circuit's ruling (Opp. 31), strains credulity: the Second Circuit recognized (based on Argentina's and its counsel's own declarations) that future breaches were imminent. *NML II*, 727 F.3d at 238; *cf. Dombrowski v. Pfister*, 380 U.S 479, 485 (1965) ("injunctive relief looks

to the future"). Sure enough, Argentina's brazen and violative course of conduct continues to this day. Pl. Br. 20-27.

Argentina's conduct compounding its violation is independently actionable. It is settled law that "a party who breaches a contract twice in the same way has committed two separate breaches." *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 91 (2d Cir. 1997); *see also Prime Mgmt. Co. v. Steinegger*, 904 F.2d 811, 816 (2d Cir. 1990) (a plaintiff can maintain a suit for an "intermittent breach" of "a contract to be performed over a period of time" even if the second breach is "identical" to an earlier breach). Argentina's protestation that holding it accountable for each of its unlawful payments would undermine restructuring (Opp. 31) has been rejected multiple times, is legally irrelevant to whether it breached its contractual obligations, ignores the distinctions between the text of the FAA and other sovereign debt instruments, and disregards the fact that Argentina's liability arises against the background of an extensive course of dishonoring its legal obligations to the FAA Bondholders in every manner imaginable.

### C. Argentina's Characterization Of The Impact Of The Second Circuit's Interpretation Of The Pari Passu Clause Is Premature And Incorrect

Argentina also asserts that equitable considerations compel this Court to ignore the Second Circuit, and to conclude that Argentina did not breach the Pari Passu Clause. Opp. 36-38.

Argentina's equitable arguments are premature because they address the purported effects of Plaintiff's *remedy* for Argentina's breach. *See* Opp. 36 (IMF commentary regarding the effect of "the type of remedy"); *id.* ("[T]he United Nations General

7

Assembly recently sought to limit the Amended Injunctions' impact"); *id.* at 37 ("any new injunctions would clearly function as judgment execution devices"); *id.* at 38 ("Plaintiffs would also not be able to establish the requisite equitable basis for any new *pari passu* injunctions."). Plaintiff has moved here only for partial summary judgment as to Argentina's breach of the Pari Passu Clause—it has not moved for any remedy. Until it does, Argentina's arguments are irrelevant and premature.

Moreover, these arguments are without merit.

1. Argentina claims, without support, that the Second Circuit's interpretation of the Pari Passu Clause "threatens the stability of sovereign debt restructurings going forward." Opp. 36. In fact, the Second Circuit's ruling merely affirms a sovereign bond issuer's freedom of contract and it holds such issuers to the terms of their contracts. Argentina knowingly included the Pari Passu Clause in the FAA, along with other terms, to entice investors who were wary of investing in a nation with a history of default; other issuers may include or exclude such terms in future offerings. Giving sovereigns an enforceable clause they can elect to use or not in their bond contracts does not cause any harm—indeed, it may enable even sovereigns with torrid histories of default to obtain needed financing.

The international sovereign bond market has not been negatively affected by the Second Circuit's ruling. This is evidenced by the fact that issuers, who remain free to choose the law governing their bonds, have continued to choose New York law over the law of other jurisdictions. Declaration of Deborah Green in Support of the Reply Memorandum of Law in Support of the Motion By NML Capital, Ltd. for Partial

8

Summary Judgment, dated April 7, 2015 ("Green Decl."), at ¶¶ 3, 5-6. Since March 1, 2012, at least 54 international sovereign bond issuances have chosen for New York law to apply. *Id.* at ¶ 6. Similarly, issuers can, and commonly have, chosen to include provisions, such as collective action clauses (CACs) and exit consents, that reduce the risk of holdouts in the event of a restructuring. Cohen Decl. Ex. 2 (4/10/13 Moody's); Ex. 3 (3/24/15 El Cronista).

Nor would any harm result from allowing additional Plaintiffs to enjoy the protections that the Pari Passu Clause provides them. A finding that a debtor breached a similar pari passu clause would not compel equitable relief. *See Texas v. New Mexico*, 482 U.S. 124, 131 (1987) ("specific performance is never demandable as a matter of absolute right"). Therefore, sovereigns can avoid a ratable payment injunction by declining to follow Argentina's deliberate and contumacious path—which should not be difficult, as "the case of Argentina was and remains unique in its unilateral and coercive approach to the debt restructuring." Cohen Decl. Ex. 2 (4/10/13 Moody's).

2.     Argentina also overstates the harm it faces if the present motion is granted. Whether Argentina has the ability to pay Plaintiffs is irrelevant because the pending motions specifically request that the appropriate remedy for Argentina's violations be determined in subsequent proceedings. In any event, Argentina has shown that it unquestionably *can* pay substantial amounts to creditors *when it chooses*—such as Argentina's February 2014 settlement with the Spanish oil company Repsol for $5 billion and May 2014 settlement with the Paris Club nations for $9.7 billion. Cohen Decl. Ex. 4

(2/26/14 NYT); Ex. 5 (5/29/14 WSJ).  It has simply chosen not to do so here, hence the current motion.  Regardless, issues concerning future relief are still premature.

3.      Argentina's contention that there is no "requisite equitable basis for any new *pari passu* injunctions" (Opp. 38) also fails.  At the outset, Argentina's unclean hands with respect to this litigation—and its failures to comply with the Amended February 23 Orders in particular—bar Argentina from invoking any equitable arguments. The Court has recognized as much on various occasions, most recently stating:

> The court is mindful that considerations of comity play a role when deciding matters involving foreign sovereigns.  *See Aurelius Capital Master, Ltd. v. Republic of Argentina*, 589 F. App'x 16, 18 (2d Cir. 2014). The Republic of Argentina, as a foreign sovereign, is entitled to a degree of grace and comity.  *Id*.  But comity is a two-way street.  The Republic, in a contract of its own signing, irrevocably acceded to the jurisdiction of the United States courts for disputes arising under that contract.  *See* FAA ¶ 22 . . . When those courts issued judgments, the Republic refused to honor them.  Comity would have urged the opposite.

*NML Capital, Ltd. v. Republic of Argentina*, No. 08 Civ. 6978 (TPG) (S.D.N.Y. Mar. 12, 2015) (ECF No. 762).  Any injunction that may be entered in this case would of course be equitable; and it is a given that there is nothing inequitable about compelling a debtor to honor its obligations to one class of creditors equally with its obligations to another— just as it contracted to do.  Despite that obligation, Argentina has persisted in its systematic scheme of attempting to make payments to the Exchange Bondholders while refusing to make any payment to FAA Bondholders.  Nothing in Argentina's conduct in these cases entitles it to any equitable accommodation whatsoever.

## II.

### ARGENTINA'S VARIOUS ARGUMENTS TO AVOID
### SUMMARY JUDGMENT ARE ALL UNAVAILING

**A.    *Res Judicata* Does Not Bar Plaintiff's
Claims Under The Pari Passu Clause**

**1.    Federal Law Governs The *Res Judicata* Analysis In This Case**

Argentina's argument that the Court must apply state, rather than federal law to

the *res judicata* analysis, is meritless.  The judgments at issue here are federal judgments.

"[T]he preclusive effect of a prior judgment in a federal action . . . is governed by federal

law."  *Phoenix Canada Oil Co. v. Texaco Inc.*, 749 F. Supp. 525, 533 n.12 (S.D.N.Y.

1990); *see also Raffe v. John Doe*, 619 F. Supp. 891, 896 (S.D.N.Y. 1985) ("[I]t is widely

recognized that the determination of the scope of a federal court judgment is governed by

federal law." (citing 18 C. Wright, A. Miller, & E. Cooper, *Federal Practice and

Procedure: Jurisdiction* § 4466, at 617–18 (1981))).  Federal law governs because "[t]he

primary purposes of the preclusion doctrines are to preserve the effectiveness of

judgments rendered" and "[w]here the prior judgment was rendered by a federal court,

the interest in protecting that judgment is primarily federal in nature."  *Johnson v. Eli

Lilly & Co.*, 689 F. Supp. 170, 172–73 (W.D.N.Y. 1988) (citing *Gelb v. Royal Globe Ins.

Co.*, 798 F.2d 38, 42 n.3 (2d Cir.1986)).[3]

---

[3]    In the face of this authority, Argentina musters a single citation—an article in American Law
Reports—for the proposition that "[i]t has been generally held or recognized that state law
governs the applicability of the doctrine of *res judicata* . . . in a federal court action . . . where the
issues involved in the prior judgment were issues of state law."  Opp. 13 n.14 (citing 19 A.L.R.
Fed. 709) (omissions in the original).  But Argentina's ellipses omit a key qualification to this
"rule":  it applies only to cases "in which jurisdiction is based solely on diversity of citizenship of
the parties."  19 A.L.R. 709 § 3[a].  Here, jurisdiction does not arise from diversity, but rather

11

Moreover, even if New York law did apply, *res judicata* still would not bar Plaintiff's claim because *res judicata* analysis under New York and federal law is substantially the same.  *Duane Reade, Inc. v. St. Paul Fire and Marine Ins. Co*., 600 F.3d 190, 195 (2d Cir. 2010); *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997).  Argentina does not assert any meaningful difference between federal and New York *res judicata* law, nor would anything turn on such a difference even if one existed.

Argentina does not and cannot point to any actual conflict between New York and federal principles of *res judicata*.  The New York cases cited by Argentina rely on the same *res judicata* principles used in federal cases, including the principles relied on by Judge Baer in *Export-Import Bank of the Republic of China v. Grenada*, No. 13 Civ. 1450 (HB), 2013 WL 4414875 (S.D.N.Y. Aug. 19, 2013) (the "*Grenada* litigation").  *Compare, e.g.*, *Smith v. Russell Sage Coll.*, 54 N.Y.2d 185, 192–93 (1981) (whether claims arise from the same transaction or series of transactions "'depends on how the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage'" (quoting Restatement (Second) of Judgments [Tent Draft No. 1], § 61)) *with Grenada*, 2013 WL 4414875, at *2 (analyzing the "same cause of action" prong of *res judicata* analysis requires considering "(1) whether the underlying facts are related in time, space, origin, or motivation; (2) whether the underlying facts

---

from the Foreign Sovereign Immunities Act, 28 U.S.C. § 1330, 1605.  Since the ability to sue sovereigns is a uniquely federal interest, it therefore follows that the preclusive effect of judgments is also governed by federal law.

form a convenient trial unit; and (3) whether their treatment as a unit conforms to the parties' expectations.") (quoting *Channer v. Dep't of Homeland Sec.*, 527 F.3d 275, 280 (2d Cir. 2008)) (internal quotation marks and citations omitted)).[4]  Most recently, in the case quoted by Judge Baer to define principles of *res judicata* in the *Grenada* litigation, the Second Circuit defined the doctrine of *res judicata* the same way "[u]nder both New York law and federal law" and properly applied federal law to the *res judicata* analysis in that case.  *Duane Reade*, 600 F.3d at 195.[5]

### 2. Argentina Cannot Meet Either Of Two Key *Res Judicata* Requirements

Argentina does not—and cannot—demonstrate that either of two key requirements has been met for *res judicata* to preclude a later-filed claim.  *See* Pl. Br. at 28-32.  First, the Pari Passu claim is not the "same cause of action" such that it involves "the same transaction, evidence, and factual issues."  *See Sure-Snap Corp. v. State Street Bank & Trust Co.*, 948 F.2d 869, 874 (2d Cir. 1991).  Second, the Pari Passu claim "*could not have been* brought in the prior action"—such as claims that "that arise after the

---

[4]     That these tests are identical is not surprising, given that both New York and federal cases cite to the same section of an authoritative treatise on judgments.  *See* Restatement (Second) of Judgments § 24(2) (1982) ("What factual grouping constitutes a 'transaction', and what groupings constitute a 'series', are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.").

[5]     Rather than attempting to distinguish the Court's decision in the *Grenada* litigation, Argentina tries to hide from that decision by arguing that it is not applicable to this case.  Argentina argues in a footnote that Judge Baer "mistakenly" applied federal law in the *Grenada* litigation and that New York, rather than federal, law should govern the *res judicata* analysis in this case.  Opp. at 13 n.14.

commencement of [a] prior action." *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 919 (2d Cir. 2010) (emphasis in original).

>   a.   Plaintiff's Claims Based on Argentina's Pari Passu Violations And Its Claim Based on Argentina's Failure To Pay Arise From Different Courses of Conduct

Violations of the Pari Passu Clause, even though they arise from the same contract as Argentina's failure to pay principal and interest on its bonds, are not part of the same cause of action. *See* Pl. Br. at 28-31; *see also Grenada*, 2013 WL 4414875, at *2 (analyzing the "same cause of action" prong of *res judicata* analysis requires considering "(1) whether the underlying facts are related in time, space, origin, or motivation; (2) whether the underlying facts form a convenient trial unit; and (3) whether their treatment as a unit conforms to the parties' expectations."). Examination of the two claims at issue here demonstrates that a Pari Passu claim is independent and distinct from the claims leading to Plaintiff's judgments for principal and interest due.

Plaintiff's Pari Passu claims rely on a different course of conduct than Plaintiff's prior complaints seeking judgment for principal and interest on the defaulted debt. Plaintiff's original actions for principal and interest relied only on Argentina's 2001 default. Those actions required Plaintiff to prove its ownership interest in Argentine bonds, Argentina's default on the bonds, and the amounts of principal and interest due. The focus of those actions was Argentina's *failure to pay* on its bonds. In contrast, proof of ongoing Pari Passu violations requires different facts not already in evidence in the earlier proceedings and is based on a totally distinct legal issue—the meaning of the Pari Passu Clause. The focus of the Pari Passu claim is the manner in which has Argentina

14

*paid* and *continues to pay* interest to the Exchange Bondholders without paying the FAA Bondholders, including legislative enactments and discriminatory payments (or attempted payments) which began in 2005 and took place as recently as March 31, 2015.  In addition to proving its ownership interest in the FAA Bonds, to prevail on its Pari Passu cause of action, Plaintiff must prove that Argentina took formal action, by virtue of enacting Laws 26,017 and 26,547, to create preferred classes of bondholders in the 2005 and 2010 Bond Exchanges, and that these laws relegated Plaintiff's bonds to non-payment status.  It must also establish that Argentina has paid or attempted to pay interest on the new bonds, while paying nothing to Plaintiff.  And, as the Second Circuit concluded, Plaintiff also could establish that Argentina's officials declared—in speeches and SEC filings—that Argentina would never pay on Plaintiff's bonds, while paying the new bonds.

Indeed, the parties and the Court clearly expected that the claims could be litigated separately.  In 2004, Argentina asserted a counterclaim seeking a declaratory judgment that the Pari Passu Clause does not require pro rata payments or otherwise prohibit Argentina from paying other debt while Plaintiff's debt under the FAA remains outstanding.  Cohen Decl. Ex. 6 (2/3/04 Answer and Counterclaim).  Plaintiff moved to dismiss that counterclaim.  The Court denied Plaintiff's motion, Cohen Decl. Ex. 7 (4/5/04 Order), but subsequently granted Plaintiff summary judgment on its claim for money damages.  Following that grant of summary judgment, Argentina wrote a letter to the Court requesting that the Court enter a partial judgment pursuant to Fed. R. Civ. P. 54(b) in light of Argentina's outstanding counterclaim.  In its letter, Argentina

15

represented to the Court that it was "content to leave [its counterclaim] in suspense pursuant to the Court's prior rulings unless NML takes some action that would require us to activate it." Cohen Decl. Ex. 8 (12/21/06 Ltr. from Blackman to J. Griesa). As requested, the Court entered a Rule 54(b) partial judgment (granting NML judgment on its claim for money damages for non-payment of the bonds).

This Court's decision to enter a Rule 54(b) judgment demonstrates that the Pari Passu claim is separate and distinct from the claim for repayment of principal and interest due. In order to enter the Rule 54(b) judgment, the Court first had to determine that Plaintiff's claim for principal and interest was separate and distinct from any claim that remained pending. Claims are separate when they have minimal factual overlap. *See Hudson River Sloop Clearwater, Inc. v. Dep't of Navy*, 891 F.2d 414, 418 (2d Cir. 1989) (district court may enter partial final judgment under Rule 54(b) only where the adjudicated and unadjudicated claims "are sufficiently separate and distinct as to lend themselves to review as single units"); *Siderpali, S.P.A. v. Judal Indus., Inc.*, 833 F. Supp. 1023, 1034 (S.D.N.Y. 1993) (entry of partial final judgment improper "[w]here the claim on which final judgment is sought is inherently inseparable from, or closely related to the claims still pending") (internal quotation marks and citations omitted). The same rule applies to counterclaims. *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 9 (1980) ("[C]ounterclaims, whether compulsory or permissive, present no special problems for Rule 54(b) determinations; counterclaims are not to be evaluated differently from other claims. . . . Like other claims, their significance for Rule 54(b) purposes turns

16

on their interrelationship with the claims on which certification is sought.") (internal citation omitted).

In other words, by entering a Rule 54(b) judgment, this Court implicitly ruled that a final judgment on Plaintiff's claim for principal and interest could not bar a subsequent claim for breach of the Pari Passu clause. *See Automatic Liquid Packaging, Inc. v. Dominik*, 852 F.2d 1036, 1038 (7th Cir. 1988) (in analyzing counterclaims, the court noted that "if the overlap between appealed and retained claims is . . . so complete that the claims could not have been maintained as separate actions without running afoul of the rule of *res judicata* that forbids the splitting of a single claim, [then] it is not a case of multiple claims and Rule 54(b) is inapplicable.").

Were there any doubt, this Court made clear that claims under the Pari Passu Clause should survive final judgment in its 2011 ruling that Argentina breached the Pari Passu Clause:

> It is DECLARED, ADJUDGED, and DECREED that the Republic's payment obligations on bonds include its payment obligations to bondholders who have brought actions to recover on their defaulted bonds, and **on judgments** entered pursuant to judicial action brought by bondholders.

Cohen Decl. Ex. 9 at 4 ¶ 3 (12/7/11 Order) (emphasis added). Thus, in conformance with the Court's rulings and the parties' expectations, the Court should hear Plaintiff's Pari Passu claims.

Argentina misses the point with its argument that Plaintiff should have expected that Argentina would engage in a restructuring after its 2001 default on its external indebtedness. While it is true that Plaintiff may have expected Argentina to attempt to

17

restructure its defaulted debt, nothing about the way in which Argentina has carried out

the restructuring could have been expected, nor could Plaintiff reasonably have expected

that claims arising out of the non-payment of interest and those based on the Pari Passu

Clause violation would form a "convenient trial unit."[6]  Plaintiff's Pari Passu claim is

based not on Argentina's restructuring, but rather on Argentina's decision to reduce the

rank of its payment obligations under the FAA bonds vis-à-vis the Exchange Bonds.

None of the statements that Argentina proffered made this clear at all.  Since Plaintiffs

filed their claims seeking money judgments, Argentina has asked creditors to take an

unprecedented haircut, passed laws specifically to subordinate the FAA bonds, and, in

spite of the rights of FAA bondholder plaintiffs, issued exchange bonds of superior rank

and paid interest on them, and openly defied orders of this and other Courts.  This

outrageous course of conduct cannot remotely be said to have been the "expected" result

of the 2001 default.  The parties thus could not reasonably have expected to litigate the

non-payment claim and the Pari Passu Clause violation claim together.  In fact, the

parties clearly expected that the claims could be litigated separately, *see* part II.A.2, *supra*.

---

[6]      Argentina primarily cites *Smith v. Russell Sage Coll.*, 54 N.Y.2d 185 (1981) and *UBS Sec. LLC v. Highland Capital Mgmt., L.P.*, 927 N.Y.S.2d 59 (1st Dep't 2011) as support for its contention that Plaintiff's claims here "arise from the same set of related facts and form a convenient trial unit."  Opp. at 14.  Neither of these New York state cases is apposite.  The question in *Smith* was "whether dismissal of the initial [action] on Statute of Frauds and Statute of Limitations grounds must be said to have extinguished the subsequent [action] as well."  *Smith*, 54 N.Y.2d at 188.  Similarly, in *UBS Sec. LLC*, the plaintiff's "new" claims were no more than the causes of action that it had unsuccessfully proposed to add to its original complaint, which had been dismissed.  *See UBS Sec. LLC*, 927 N.Y.S.2d at 475 ("[W]e note that, when seeking permission to amend the complaint, [Plaintiff] itself asserted that 'the new causes of action arise out of the same or related circumstances and events as [Plaintiff's] pending claims.'").

18

Argentina's reliance on *Pons v. People's Republic of China*, 666 F. Supp. 2d 406 (S.D.N.Y. 2009) is misguided. First, Argentina egregiously mischaracterizes *Pons* by suggesting that the court held that a *pari passu* clause is the same cause of action as a claim for non-payment. *See* Opp. at 17. But there was no *pari passu* clause at issue in *Pons*. The *Pons* court noted that it "need not address whether claims related to a valid *pari passu* clause constitute a separate cause of action . . . or whether injunctive relief of the kind plaintiffs seek would be appropriate . . . because [the bonds at issue] did not contain a *pari passu* clause." *Id.* at 414 n.5. It was only in that context that the court stated that, since there was no *pari passu* clause at all, plaintiffs had "but one cause of action: a right to payment." *Id.* at 414-15. Therefore, all discussion regarding the plaintiff's request for equitable relief (an injunction forbidding the debtor from paying any of its other debts without paying plaintiffs a pro rata share), *see id.* at 414, is pure dicta. In addition, the *Pons* court rejected the plaintiffs' request for equitable relief not because the plaintiffs had already sought similar relief in prior actions, but instead because the plaintiffs' request was an effort to dodge the statute of limitations that had barred the plaintiffs' prior damages actions. *See id.* That is not the case here. In this case, Plaintiff sought money judgments in a timely manner and now seeks relief under the Pari Passu Clause based on separate and distinct breaches of the FAA: Argentina's actions to lower the rank of its obligations to Plaintiff.

Regardless of the relief sought, Plaintiff's Pari Passu claims are separate from its prior claims because the Pari Passu claims are based on a different course of conduct— and, as the *Pons* Court recognized, "most definitely, the cause of action is something

19

distinct from the remedy or the relief sought." *Id.* (quoting *Williams v. Walsh*, 558 F.2d 667, 671 (2d Cir. 1977)).

                    b.     Plaintiff's Pari Passu Claims Could Not
                            Have Been Pled When They First Filed Suit

Argentina is also unable to demonstrate the *res judicata* requirement that the Pari Passu claim could have been brought when the Plaintiff brought its non-payment claim. Under New York and federal law, *res judicata* does not bar claims that "that arise after the commencement of [a] prior action." *Bank of N.Y.*, 607 F.3d at 919. Argentina indisputably breached the Pari Passu Clause after the Plaintiff filed its prior actions for principal and interest.

The course of Argentina's conduct that the Second Circuit identified as violating the Pari Passu Clause continued through the issuance of the 2010 Exchange Bonds. And Argentina has since continued to engage in such violative conduct. Although Argentina posits the 2005 Lock Law as the key date establishing Argentina's breach of the Pari Passu Clause (Opp. 18), that act was merely one piece of "the combination of Argentina's executive declarations and legislative enactments" that the Second Circuit concluded breached the Clause. *NML I*, 699 F.3d at 260.

Argentina's latest violative legislative enactment occurred well after all the post-judgment complaints were filed: Law 26,886 in 2013 (which, like the Lock Law and Lock Law Suspension, prohibits Argentina from offering to pay FAA Bondholders what they are owed, or anything close to it) and Law No. 26,984 in 2014 (purportedly replacing BNY as Indenture Trustee and sending payment to BNY's purported

20

replacement, Nación Fideicomisos S.A.). Argentina appears to argue that only the first

legislative enactment, the 2005 Lock Law, is at issue. Opp. 18-19. Argentina is

mistaken. "[A] party who breaches a contract twice in the same way has committed two

separate breaches." *Interoceanica*, 107 F.3d at 91. Argentina has also continued to make

discriminatory payments to Exchange Bondholders. Argentina's latest payment on the

Exchange Bonds occurred on March 31, 2014 (when enforcement of the Pari Passu Order

was stayed until the Supreme Court denied Argentina's petition for a writ of certiorari on

June 16, 2014), well after Plaintiff's original complaints were filed. And Argentina has

attempted to make additional payments since then, most recently on March 31, 2015.

Cohen Decl. Ex. 1 (3/31/15 Reuters); Ex. 10 (3/31/15 La Nación); Ex. 11 (4/1/15 El

Cronista).

For its contrary position, Argentina relies primarily on the *res judicata* principles

articulated in *In re Hunter*, 4 N.Y.3d 260 (2005) and *O'Brien v. City of Syracuse*, 54

N.Y.2d 353 (1981). Opp. Br. at 13. But neither of these cases indicates that *res judicata*

is applicable here.[7] In *In re Hunter*, plaintiffs had accused an estate's trustee of failing to

---

[7] Each of the cases that Argentina cites to support its *res judicata* argument is wholly
distinguishable from this case because none of those cases involved claims alleging new facts or a
different course of conduct. *See, e.g., Ellis v. Abbey & Ellis*, 742 N.Y.S.2d 225, 227 (1st Dep't
2002) (Court rejected plaintiff's attempt to bring claims that could have been pled in the
alternative in an earlier action for services rendered by plaintiff's decedent to defendant law
firm); *Hahl v. Sugo*, 169 N.Y. 109, 114 (1901) (Court rejected plaintiff's attempt to bring
equitable claims that could have been brought alongside legal claims for singular act of wrongful
entry upon land); *Hellstern v. Hellstern*, 279 N.Y. 327, 332 (1938) (Court rejected plaintiff's
attempt to bring claims that could result in a holding entirely inconsistent with former judgments
regarding ownership of certain funds because "it is plain from the findings in the first action that
[the relevant facts] were known to the plaintiff before the judgment was rendered in the first
action, and that they were the subject of proof there"); *Matter of Reilly v. Reid*, 45 N.Y.2d 24, 26
(1978) ("In the earlier proceeding, petitioner alleged the same foundation facts and pressed for

question the actions of another estate's trustee during proceedings that had long-since

concluded with respect to that second estate.  4 N.Y.3d at 266-67.  The Court rejected this

argument and concluded that the plaintiff was merely trying to relitigate the propriety of

the second trustee's conduct, which had long-since been adjudicated in separate

proceedings.  *Id.* at 270-71.  In *O'Brien*, the plaintiffs filed a complaint for *de facto*

misappropriation and lost on the merits.  Five years later, the plaintiffs filed a new

complaint—essentially identical to the appropriation action that they had already lost—

and then amended that new complaint to include trespass claims.  *See O'Brien*, 54

N.Y.2d at 357.  The Court rejected the plaintiffs' claims because "[h]ere, all of the

defendants' conduct . . . was also raised during the [*de facto* appropriation] suit as the

basis for that litigation."  *Id.* at 357.  The Court also noted, however, that "the second

category of allegations—the general trespass allegations—are *not* barred by *res judicata*

---

relief nearly identical to that requested in this proceeding"); *Mudholkar v. Univ. of Rochester*, 261 F. App'x 320, 322 (2d Cir. 2008) ("[T]he complaint itself contains no new factual allegations that were not resolved in the [earlier] lawsuit, and thus 'from the face of the complaint' it is clear that Appellant's claims are barred"); *Kinsman v. Turetsky*, 804 N.Y.S.2d 430, 432 (3d Dep't 2005) ("[T]he record reveals that this claim was viable before the statute of limitations had run and that plaintiffs could have moved to amend the complaint to add that cause of action."); *HSBC Bank USA, Nat. Ass'n v. Adelphia Commc'ns Corp.*, No. 07 Cv. 553A, 2009 WL 385474, at *14-15 (W.D.N.Y. Feb. 12, 2009), *aff'd sub nom.*, *In re Adelphia Recovery Trust*, 634 F.3d 678 (2d Cir. 2011) (Plaintiff alleged lack of "full knowledge" of facts underlying new claim, not that the facts had been fraudulently concealed or could not have been discovered with due diligence); *U.S. Bank Nat'l Ass'n v. Greenpoint Mortg. Funding, Inc.*, 950 N.Y.S.2d 494, 494 (Sup. Ct. N.Y. Cnty. 2012), *aff'd*, 105 A.D.3d 639 (1st Dep't 2013) ("[Plaintiff] had the requisite knowledge sufficient to bring all its claims in the original complaint, and so should be barred from an attempt to circumvent the prior order by bringing an amended complaint.").

Argentina also cites one case in which the Court held that *res judicata* did *not* bar a plaintiff from attacking the same county policy at issue in plaintiff's earlier retaliation claim because  "[t]he two lawsuits allege different claims and injuries, and require plaintiff to establish different facts." *Jean-Gilles v. Cnty. of Rockland*, 463 F. Supp. 2d 437, 454 (S.D.N.Y. 2006).

to the extent that they describe acts occurring after the [original] lawsuit."  *Id.* at 358

(emphasis added); *see also Interoceanica,* 107 F.3d at 91 (2d Cir. 1997) (later-occurring

wrong are not "related in time, space, or origin to the wrongs litigated" in the first

action).

Because Plaintiff's Pari Passu claims arise out of facts and circumstances distinct

from those underlying its prior actions and because critical facts and circumstances arose

after those prior actions were filed, *res judicata* does not bar this action.

> **B.     Argentina's Obligations Under The Pari Passu Clause**
> **Are Not Merged Into The Judgments**
>
> **1.     Argentina Wrongly Argues For A Rigid And**
> **Outmoded Application Of The Merger Doctrine**

Argentina's argument that post-judgment relief based on the Pari Passu Clause is

barred by the doctrine of merger is equally unavailing.[8]  Again, there is no conflict of

laws—both New York and federal courts have long recognized that the merger doctrine

is not a defense that is separate from *res judicata.  Migra v. Warren City Sch. Dist. Bd. Of

Educ.*, 465 U.S. 75, 77 n.1 (1984) ("Claim preclusion . . . encompasses the law of merger

and bar."); *Gramatan Home Investors Corp. v. Lopez*, 46 N.Y.2d 481 (1979) ("merger

and bar[] is but a component of the broader doctrine of *res judicata . . .*"); *In re Doherty*,

76 A.D.2d 14, 19 (N.Y. App. Div. 1980) (holding that the "doctrine of merger" is a

"'theoretical subdivision' of the *res judicata* doctrine") (quoting Siegel, N.Y. Prac. §

---

[8]     Argentina acknowledges that the merger doctrine does not apply to actions where summary, but
not final, judgment has been granted.  Opp. at 23 n.18.

450).[9]  Therefore, the analysis under the doctrines of merger and *res judicata* are the same and merger does not bar Plaintiff's claims under the Pari Passu Clause for the reasons discussed above.  *See* part II.A, *supra*.

Even if merger were a distinct defense, it would not bar Plaintiff's Pari Passu Clause claims under New York or federal law.[10]  "New York courts have made clear that the [merger] doctrine should not be applied in a rigid or technical manner, and that the doctrine does not automatically prevent a court from looking behind a judgment to ascertain the nature of the underlying claim upon which the judgment is based."  *Orix Credit Alliance, Inc. v. Horten*, 965 F. Supp. 481, 485 (S.D.N.Y. 1997); *see also Jay's Stores, Inc. v. Ann Lewis Shops, Inc.*, 256 N.Y.S.2d 600, 605-06 (1965) (the "limitations . . . on the operation of the doctrine of merger are of general application").  The case law "cannot be regarded as establishing, that the bare fact that different causes of action spring out of the same contract, *ipso facto* renders a judgment on one, a bar to a suit on another, however distinct they may be, or however dissimilar the breaches, in their nature or origin."  *Perry v. Dickerson*, 85 N.Y. 345, 352 (1881).

---

[9]    Incredibly, the only case that Argentina cites to suggest otherwise expressly recognizes that merger is merely a species of *res judicata*.  *Craven v. Rigas*, 85 A.D.3d 1524, 1527 (3d Dep't 2011) (introducing its discussion of the merger doctrine with the phrase "[p]ursuant to settled principles of *res judicata* . . .").

[10]    Even the cases on which Argentina relies recognize that the merger doctrine (a subset of *res judicata*) is generally the same under New York and federal law.  *See Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 102 (2d Cir. 2004) ("The general rule under New York and federal law is that a debt created by contract merges with a judgment entered on that contract, so that the contract debt is extinguished and only the judgment debt survives.").

Under federal law, once a court concludes that the first lawsuit "was a distinct cause of action . . . it follows that the [first judgment] is not *res judicata* as to the [second cause of action], nor is such a claim barred by the doctrine of merger by judgment." *In re Cohoes Indus. Terminal, Inc.*, 78 B.R. 681, 702 (Bankr. S.D.N.Y. 1987). If the second suit alleges a "separate and distinct liability," then "the doctrines of *res judicata*, merger and bar" do not apply. *Turchon v. United States*, 77 B.R. 398, 401 (E.D.N.Y. 1987), *aff'd sub nom. In re Turchon*, 841 F.2d 1116 (2d Cir. 1988). Similarly, when the second cause of action alleges breaches of contract occurring after the first suit, the second suit will "not be barred by the merger/*res judicata* defense." *Cohoes Indus. Terminal, Inc. v. Latham Sparrowbush Associates*, 75 B.R. 147, 148 (S.D.N.Y. 1987).

Therefore, where the causes of action underlying the judgment and subsequent claims are wholly distinct, as they are here, *see* part II.A.2, *supra* and part II.B.2, *infra*, the merger doctrine does not apply.

## 2. The Pari Passu Clause Entitles Plaintiff To Relief Other Than A Judgment For Principal And Interest

Contrary to Argentina's contentions, Plaintiff is not "seeking to enforce a clause that . . . entitles them to the very same relief that they have already reduced to judgment – payment in full on their debt." Opp. 24. The Pari Passu Clause operates independently of Plaintiff's rights to payment of principal and interest; rather it entitles Plaintiff to protection against two "different forms of discrimination." *NML I*, 699 F.3d at 259. First, the Clause "prohibits Argentina, as bond *issuer*, from formally subordinating the bonds by issuing superior debt." *Id*. Second, it "prohibits Argentina, as bond *payor*,

from paying on other bonds without paying on the FAA Bonds." *Id.* This additional protection, built in to the FAA by Argentina in order to entice bondholders to purchase its debt, is especially important in this case where Argentina has steadfastly refused to fulfill its payment obligations to Plaintiff, while engaging in unprecedented forms of discrimination. Argentina's payment obligations under the money judgments are independent of its equal treatment obligations. Argentina can comply with the Pari Passu Clause even if it never pays Plaintiff one penny, as long as Argentina affords similar treatment to all holders of its external indebtedness. Moreover, there is no adequate remedy at law for Argentina's breach of the Pari Passu Clause. Therefore, even though Plaintiff's claims for principal and interest and Pari Passu relief "spring out of the same contract," Plaintiff's Pari Passu claims are sufficiently "distinct . . . in their nature" to survive the entry of the money judgments. *In re Cohoes*, 78 B.R. at 702; *Perry*, 85 N.Y. at 352.

### 3. Even If New York Law Applied, The Merger Doctrine Cannot Defeat Plaintiff's Equitable Rights

Even if New York law, rather than federal law, applied, and even if the Court were to hold that Plaintiff's "securities" had merged into Plaintiff's judgments, New York's doctrine of merger still would not bar Plaintiff's enforcement of the Pari Passu Clause here because the merger doctrine is not applied to defeat a party's equitable rights.

The purpose of the merger doctrine is to "prevent successive actions on the same cause." *Jay's Stores*, 256 N.Y.S.2d at 603. In general, New York courts have traditionally applied the merger doctrine to contract cases, such that the contract becomes

26

entirely merged in the judgment when the two claims arise from the same transaction.
This rule, however, only applies to the extent that the contract does not give the plaintiff
any advantage not inherent in the judgment. Even where the merger doctrine applies to
cancel the contract, courts nevertheless will look behind the judgment to the underlying
contract to preserve any advantages that the underlying contract offers the plaintiff. *See
Orix Credit Alliance*, 965 F. Supp. at 485 ("New York courts have made clear that the
[merger] doctrine should not be applied in a rigid or technical manner, and that the
doctrine does not automatically prevent a court from looking behind a judgment to
ascertain the nature of the underlying claim upon which the judgment is based."); *Jay's
Stores*, 256 N.Y.S.2d at 605 (noting that the merger doctrine "will not be carried any
further than the ends of justice require" and that "a judgment does not change the
essential nature and real foundation of the cause of action" (citation and quotation marks
omitted)); *Wadsworth v. Lyon*, 93 N.Y. 201, 213 (1883) ("[A] judgment upon a contract
technically merges the demand, but not in so complete a sense that the courts may not
look behind the judgment to see upon what it is founded for the purpose of protecting the
equitable rights connected with the original relation to the parties[.]"(citation and
quotation marks omitted)). Thus,

> merger by judgment does not destroy all of the identifying characteristics or
> relationships of the cause of action which the judgment determines; and it
> seems rather clear that the doctrine was not designed to weaken rights or
> destroy identities which the prevailing party had in his original cause and
> which he succeeded in establishing by judgment in his favor.

*Jay's Stores*, 256 N.Y.S.2d at 604; *accord* 46 AM. JUR. 2D Judgments § 458 (2010)
(when a plaintiff obtains a judgment and "the original claim is extinguished and rights

27

arise upon the judgment, advantages to which the plaintiff is entitled with respect to the original claim may still be preserved despite the judgment").

While the Pari Passu Clause operates pre-judgment, it is also clearly a protective provision that is intended to survive judgment. To hold otherwise would be illogical because the Pari Passu Clause is only relevant in the context of a default and because there is no obligation under the FAA to choose between enforcement of the Pari Passu Clause and the right to payment in full upon default. Argentina agreed that its payment obligations would "at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness." Cohen Decl. Ex. 12 at ¶ 1(c) (FAA). Thus, an important advantage of the Pari Passu Clause is that the debtor cannot rank the payment obligations to Plaintiff lower than its obligations to any other holder of unsecured external indebtedness, and no such creditor can be given priority in terms of when it receives payment. If this advantage disappeared through merger and could not be enforced, there is no doubt that Plaintiff would be in a worse position than if it had not obtained a judgment. "Should a . . . remedy . . . be sought in an action on a judgment, . . . the question of merger . . . should be resolved" by the court looking behind the judgment to preserve anything about the contract that offers some benefit to the plaintiff. 17 DAVID D. SIEGEL, NEW YORK PRACTICE § 450, at 759. Thus, the Pari Passu Clause entitles the Plaintiff to equitable relief that is distinct from the payment of principal and interest. Indeed, the Court has already ruled in the Pre-Judgment Cases that the Pari Passu Clause operates post-judgment. Cohen Decl. Ex. 9 at 4, ¶3 (12/7/11 Order). The

Court, therefore, should look behind Plaintiff's judgments to enforce Argentina's Pari Passu obligations, and preserve Plaintiff's equitable rights.

## III.

## PLAINTIFF HAS ADEQUATELY ALLEGED OWNERSHIP FOR THE PURPOSES OF THIS MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff has provided adequate evidence of ownership. A signed declaration is sufficient evidence on which to grant summary judgment. *See* Fed. R. Civ. P. 56(c)(1)(a) (providing that a party may assert that a fact cannot be genuinely disputed by "citing to particular parts of materials in the record, including . . . affidavits or *declarations*") (emphasis added). Plaintiff is not required to produce additional evidence of bond ownership because Argentina has not refuted Plaintiff's allegations of ownership. *Knox v. County of Putnam*, No. 10 Civ. 1671(ER), 2012 WL 4462011, at *3 (S.D.N.Y. Sept. 27, 2012) ("non-moving party must do more than show there is some metaphysical doubt as to the material facts" . . . . [and] "must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor" (internal quotation marks omitted)); *see* Ans. at ¶¶ 30, 31, 33, 35, 37, 39, 41, 43, 45, 47, 49, 51 (conceding Plaintiff had previously "submitted documentation indicating" it was the beneficial owner of bonds and disavowing "knowledge or information sufficient to form a belief" as to Plaintiff's present ownership).

Although it is not required, Plaintiff now attaches additional evidence of ownership. *See* Fed. R. Civ. P. 56(e)(1) (court may "give an opportunity to properly support or address the fact" challenged by opposing party); Declaration of Elliot Greenberg

29

in Support of the Reply Memorandum of Law in Support of the Motion By NML Capital, Ltd. for Partial Summary Judgment, dated April 7, 2015 ("Greenberg Decl.").

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's motion for partial summary judgment as to Argentina's violations of the Pari Passu Clause. The remedy for Argentina's violations should be determined in subsequent proceedings.

Respectfully submitted,

**DECHERT LLP**

New York, New York
April 7, 2015

By: /s/Robert A. Cohen
　　Robert A. Cohen
　　robert.cohen@dechert.com
　　Dennis H. Hranitzky
　　dennis.hranitzky@dechert.com
　　1095 Avenue of the Americas
　　New York, NY 10036
　　(212) 698-3500
　　*Attorneys for Plaintiff NML Capital, Ltd.*

30